No. 81-295

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

———————

PARKER BROTHERS FARMS, INC.,
a Montana Corporation,

                    Plaintiff and Respondent,

     vs.

ED BURGESS,

                    Defendant and Appellant.

———————

Appeal from:  District Court of the Eleventh Judicial District,
              In and for the County of Flathead
              Honorable Robert Sykes, Judge presiding.

Counsel of Record:

     For Appellant:

          Murphy, Robinson, Heckathorn and Phillips, Kalispell,
          Montana

     For Respondent:

          Murray, Kaufman, Vidal & Gordon, Kalispell, Montana

———————

                    Submitted on briefs: December 17, 1981

                              Decided: March 25, 1982

Filed: MAR 25 1982

_Thomas J. Kearney_
                              Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiff brought this action in Flathead County District Court to recover the price of potatoes sold and delivered to defendant, alleging that the defendant had breached a contract for the sale of approximately 811,500 pounds of potatoes grown by the plaintiff on its Flathead Valley farm. Personal service was made upon the defendant in Jerome County, Idaho, where he resides. Pursuant to Rule 4B(1), M.R.Civ.P., the defendant moved for dismissal on the ground that the court lacked jurisdiction over him, but the motion was denied. Defendant then answered, alleging that the parties had contracted only for the sale of approximately 50,000 pounds (one truckload) of potatoes, and that this contract had been fully performed. The defendant further alleged that after this contract had been performed, the plaintiff requested that the defendant purchase the remainder of its 1977 potato crop. The defendant alleged that he declined this offer, but agreed to help "move" some of the plaintiff's potatoes into the market, thereby creating the customary merchant and grower commission relationship. The defendant also counterclaimed for his costs and expenses.

Trial without jury was held on January 15, 1981, and thereafter the court entered judgment for the plaintiff, finding that the parties had entered into a verbal agreement on May 8 and 10, 1978, for the sale of 550,000 pounds of potatoes, and then, on May 17, 1978, entered into a new agreement whereby 250,000 pounds of potatoes were shipped to the defendant on a consignment basis. The court subsequently amended its findings and conclusions to correct two mathematical errors, and entered judgment in favor of the plaintiff in

-2-

the amount of $12,864.28, plus interest and costs. The defendant appeals, raising two issues:

1. Whether the District Court's exercise of personal jurisdiction over the defendant violated Rule 4B(1), M.R.Civ.P. and the due process requirements of the federal constitution?

2. Whether the evidence supports the District Court's findings and judgment?

The plaintiff began independently marketing its potatoes in 1978 when the potato market was depressed and its broker, Small Farms, Inc., was having difficulty finding buyers for the plaintiff's potatoes. The plaintiff, through Hugh Parker, contacted a friend in Idaho to spread word of the availability of the plaintiff's potatoes. On May 8, 1978, the defendant, a potato grower and packer in Idaho, telephoned the plaintiff in Montana to negotiate for the purchase of plaintiff's potatoes. On May 9, 1978, the plaintiff shipped to the defendant one truckload (approx. 53,810 pounds) of potatoes. On May 10, 1978, the parties discussed this shipment by telephone, with the defendant seemingly pleased with the quality of the potatoes. That load of potatoes is not in dispute.

The plaintiff contends that during the May 10, 1978 telephone conversation, the defendant purchased approximately 757,690 more pounds (about 6,000 sacks) of the plaintiff's potatoes. The plaintiff then shipped 11 more truckloads to the defendant. The defendant contends that he did not contract with the plaintiff to purchase these potatoes, but rather, that he only agreed to help market the potatoes for the plaintiff.

On May 17, defendant telephoned the plaintiff, thinking that he had already received as many potatoes as he had

-3-

expected. Plaintiff informed him that he still had a "couple thousand" sacks to go. Defendant said to hold off after that in order to see how marketable the potatoes would be. He had just begun receiving rejections of plaintiff's potatoes from his customers. As to these potatoes, yet to be sent, defendant said "send them down we will see what we can do with them." (Tr. at 118.)

The defendant then apparently sold and shipped some of the plaintiff's potatoes to wholesale and retail buyers throughout Idaho, Utah, and Pennsylvania. The defendant, however, began receiving more complaints from buyers that the potatoes were not acceptable. The defendant then retrieved the plaintiff's defective potatoes and replaced them with his own nondefective potatoes. During this time, the plaintiff had sent the defendant invoices for the potatoes, but did not receive payment.

On June 5, 1978, the defendant telephoned the plaintiff and informed it that its potatoes were not merchantable in the "fresh-pack" (potatoes which are graded, washed, packed, and ready for consumption) market. The plaintiff informed the defendant that the defendant owned the potatoes and had to pay for them. The defendant then sold some of the plaintiff's potatoes to a potato processor and received $16,041.70 for them. The defendant received no other money from any sources for the plaintiff's potatoes.

The defendant has never paid the plaintiff for these potatoes and contends that these potatoes were to be sold by consignment, and that he incurred expenses of $20,934.48 in handling the potatoes, and therefore suffered a net loss of $4,893.41. The plaintiff then filed this suit.

-4-

On appeal, the defendant claims that the District Court's exercise of personal jurisdiction over him violated Rule 4B(1)(a), M.R.Civ.P. and the due process requirements of the Fourteenth Amendment to the United States Constitution.

Rule 4B(1)(a) reads:

"(1) Subject to jurisdiction. All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:

(a) the transaction of any business within this state;"

This Court uses a two-step approach in its interpretation of this statute. First, it must be determined whether the statute provides for the exercise of jurisdiction under the particular facts of the case, and second, whether the assertion of jurisdiction would offend due process requirements. State of N.D. v. Newberger (1980), ___ Mont. ___, 613 P.2d 1002, 1004, 37 St.Rep. 1119, 1121; May v. Figgins (1980), ___ Mont. ___, 607 P.2d 1132, 1134, 37 St.Rep. 493, 495.

It is not contended very seriously that the "long arm statute" does not confer jurisdiction under the facts of this case. In fact, it requires no discussion to conclude that the defendant transacted business within this state.

However, the defendant does argue strenuously that, under the second step of our test, the assertion of jurisdiction would offend due process and fundamental fairness. He grounds his argument on factors set out in three prominent cases and their progeny. Hanson v. Denkla (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283; McGee v. International Life Ins. Co. (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Internat. Shoe Co. v. Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

Generally, these cases require only that certain "minimum contacts" be established so as not to make the assertion of jurisdiction offensive to "traditional notions of fair play and substantial justice." Of more particular significance to the case at bar is the following discussion of the "minimum contacts" rule from Hanson v. Denkla, supra, 357 U.S. at 253:

". . . The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws . . ." (Emphasis added.)

In support of this rule, defendant relies on Friberg v. Schlenske (D. Mont. 1975), 396 F.Supp. 124. There, a Utah artist delivered four of his paintings to a Montana art dealer on consignment. Without authority, this art dealer pledged them to secure personal loans from Montana banks, which eventually foreclosed on the pledges and took possession of the paintings. The Montana art dealer then contacted a Texas art dealer, and offered to sell him these four paintings. After several Montana-Texas telephone calls, the Montana banks shipped the paintings to a Texas bank, and the sale was consummated. The Texas art dealer secured the paintings, which were ultimately delivered to another Texan. These two were the Texas defendants in a subsequent action brought by the Utah artist.

In that case, Senior United States District Judge Russell E. Smith stated:

"The Texas defendants had no general relationship with Montana. In this one instance they did not seek to do business in Montana. They were sought out. They had no dealings of any kind with the plaintiff. The Texas defendants did nothing which

-6-

resulted in the accrual of a tort action in Montana. Having paid the purchase price for the paintings, the Texas defendants did nothing which would lead them as reasonably prudent persons to foresee a lawsuit against them in Montana. Unless it can be said that the Texas defendants did something which would lead them as reasonable persons to foresee that they might be defendants in a lawsuit in Montana, it is simply unfair to bring them to this distant forum." 396 F.Supp. at 125.

This case is clearly distinguishable. The defendant here did seek to do business in Montana. He accepted several shipments from the plaintiff, establishing a course of dealing. Also, he has yet to pay for a good number of potatoes and didn't pay for the first undisputed load until 6 months later. That, regardless of the merits of his position otherwise, is a critical factor in favor of exercising jurisdiction over him. Friberg, supra, 396 F.Supp. at 125, in a footnote, states:

"Had they failed to make the payments required, then they might very well have contemplated that they would be sued in Montana, and perhaps the telephone conversations would be sufficient to bring the transaction within Mont.R.Civ.P. 4 subd. B. See State ex rel. Goff v. District Court, 157 Mont. 495, 487 P.2d 292 (1971); Prentice Lumber Co. v. Spahn, 156 Mont. 68, 474 P.2d 141 (1970). In such a case it would not be unfair to require them to defend here."

This is such a case. The District Court did not err in exercising jurisdiction.

Defendant also appeals from finding of fact no. 17 and conclusion of law no. 4, claiming that they are unsupported by the evidence. Reduced to their essentials, those findings state that, on May 17, defendant and plaintiff agreed that all potatoes from any further deliveries would be handled by defendant on a consignment basis. In short, the first 550,000 pounds were delivered pursuant to an oral contract for sale, and the remaining 250,000 pounds were delivered pursuant to a commission merchant and grower agreement.

-7-

There is a vast difference of opinion on this point. The plaintiff contends that all 811,500 pounds were "sold." The defendant claims that, except for the first 50,000 pound shipment, the entire transaction was a commission agreement.

The record reflects that an oral agreement was reached which was misunderstood because of the unspoken assumptions of both parties. Plaintiff, with summer on the way, needed to unload his produce, and assumed he had found a buyer. Defendant agreed to accept plaintiff's potatoes, partly out of gratitude for the first load, but assumed that he was just helping to "move" them on a commission basis.

The controversy arose because of the difficulty in marketing the potatoes. That controversy became manifest about May 17, the day the defendant called the plaintiff and told him to postpone further deliveries.

There is substantial credible evidence to uphold a finding that there was a sale of the first 550,000 pounds. The record also supports a finding that a consignment agreement developed on May 17.

When the record furnishes reasonable grounds for different conclusions, we will not disturb the findings of the District Court. Bostwick v. Butte Motor Company (1965), 145 Mont. 570, 589, 403 P.2d 614, 624. They are not clearly erroneous. Rule 52(a), M.R.Civ.P.

Affirmed.

_____
                    Justice

We Concur:

_Frank I. Haswell_
Chief Justice

_Gene L. Daly_

_Daniel J. Mann_

_Justices_