**DECKER COAL COMPANY, Plaintiff-Appellee,**

v.

**COMMONWEALTH EDISON COMPANY, Defendant-Appellant.**

No. 84–4035.

United States Court of Appeals, Ninth Circuit.

Argued Feb. 4, 1985.

Submission Stayed March 21, 1985 Pending Certification to Montana Supreme Court.

Resubmitted March 31, 1986.

Decided Dec. 1, 1986.

Donald S. Young, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for plaintiff-appellee.

Paul W. Schroeder, James K. Meguerian, Isham, Lincoln & Beale, Chicago, Ill., for defendant-appellant.

Before CHOY, ANDERSON and TANG, Circuit Judges.

TANG, Circuit Judge:

■ In early 1984, Decker Coal Company filed suit against Commonwealth Edison Company in the United States District Court for Montana alleging breach of contract. In the course of that action, the district court enjoined the prosecution of a substantially similar action Edison had filed in Illinois shortly after Decker filed its action in Montana. Edison appeals the injunction and also appeals the district court's denial of Edison's motion to dismiss Decker's complaint for lack of capacity to sue, lack of personal jurisdiction and improper venue, or in the alternative, to transfer the action to the Northern District of Illinois.[1] We determined that the question of capacity to sue under Montana law may be dispositive of the appeal, and certified the following question to the Montana Supreme Court: Does Decker Coal Company, as a joint venture between two out-of-state corporations, have capacity to bring suit as a plaintiff against a corporation under Montana law? The Montana Supreme Court answered the question in the affirmative. The appeal was then resubmitted and we affirm.

## FACTS

Decker Coal Company is a joint venture between Wytana, Inc., a Delaware corporation, and Western Minerals, Inc., an Oregon corporation. It is engaged in the surface mining of low sulfur coal and operates its plant in Decker, Montana. Commonwealth Edison Company is an Illinois corporation. In 1974, Decker Coal and Edison entered a long-term contract under which Decker agreed to supply coal to Edison in quantities between minimum and maximum tonnages from 1978 to 1997.

Although the contract expressly required Decker to supply Montana coal, it apparently was amended in 1983 to allow Decker to supply Wyoming coal in satisfaction of its obligation to supply coal from its mine in Decker, Montana. Article XI of the contract contained a force majeure provision which allowed performance to be deferred or excused upon certain events. Such events included "fire, flood, explosion, strikes, labor disputes, sabotage, riots, civil commotion, ... major equipment failures, unavailability of major transportation facilities or acts of the other party." The contract called for delivery F.O.B. the Montana mine. The coal would then be shipped by railroad to Edison plants in Illinois and Indiana.

Edison invoked the force majeure provision to defer or terminate coal purchase obligations in May, June and July, 1983. Edison claimed that structural damage to its plant in Illinois and a cracked turbine rotor at its Indiana plant justified invocation of the force majeure provision.

On January 4, 1984, Decker filed a complaint in the District of Montana seeking a

---

1. This court has jurisdiction to review the district court's denial of motion to dismiss even though it is interlocutory because the same issues underlie both that order and the injunction

order. *Fentron Industries v. National Shopman Pension Fund,* 674 F.2d 1300, 1304 (9th Cir. 1982).

declaration that the problems at the Edison plants did not qualify as force majeure events. Decker also sought damages for breach of contract, claiming that Edison failed to take sufficient measures to prevent damage to its generating plants thereby breaching an alleged contractual duty to mitigate damage.

Several days later, Edison filed an action in the Northern District of Illinois seeking a declaration that it properly invoked the force majeure provision of the contract.

On February 3, Decker filed a motion in the Montana action to enjoin further prosecution of the Illinois case. On February 8, Edison filed a motion to dismiss the Montana complaint for lack of capacity to sue, lack of personal jurisdiction and improper venue. It also sought transfer of the case to the Northern District of Illinois.

The district court, Chief Judge Battin, ruled that jurisdiction was properly asserted, that venue was proper in Montana because the alleged contract breach occurred in Montana, and that Decker had capacity to sue as a partnership entity. The motion to transfer was denied, and the motion to enjoin the Illinois proceeding was granted.

We heard oral argument on this appeal on February 4, 1985. Submission of the cause was deferred until February 15, 1985 to permit counsel to address jurisdictional questions. On March 21, 1985, we ordered further proceedings in this court stayed pending determination by the Montana Supreme Court of the capacity to sue question. On February 20, 1986, the Montana Supreme Court issued its decision holding that, under Montana law, Decker Coal Company does have capacity to bring suit in its own name against Edison. *Decker Coal Co. v. Commonwealth Edison Co.*, 714 P.2d 155 (Mont.1986). On March 31, 1986 we ordered the stay of proceedings in our court lifted, and the case submitted.

## DISCUSSION

### I. Personal Jurisdiction

The assertion of personal jurisdiction must first comply with the requirements of Montana's long-arm statute; second, it must not offend due process. *Colonial Leasing Co. v. Pugh Brothers Garage*, 735 F.2d 380, 383 (9th Cir.1984).

### A. Montana Long-Arm Statute

■ The district court concluded that jurisdiction was proper under the terms of the Montana long-arm statute. This court reviews the district court's interpretation of state law de novo. *Matter of McLinn*, 739 F.2d 1395, 1403 (9th Cir.1984) (en banc).

Mont.R.Civ.Pro. 4B(1) provides:

All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:

(a) the transaction of any business within this state. . . .

Commonwealth Edison argues that the district court incorrectly found that Mont. R.Civ.Pro. 4B(1)(a) applied. It contends that its activities within Montana are too limited to qualify as "the transaction of any business within" Montana.

The Montana cases interpreting 4B(1)(a) do not offer precise guidelines for the statute's interpretation. They do, however, suggest a rather generous approach in defining its reach. The cases *Parker Brothers Farms, Inc. v. Burgess*, 197 Mont. 293, 642 P.2d 1063 (Mont.1982), and *Prentice Lumber Co. v. Spahn*, 156 Mont. 68, 474 P.2d 141 (Mont.1970) are instructive. In *Parker Brothers Farms*, an Idaho defendant initiated telephone conversations with a Montana potato seller and together they negotiated a sale and distribution agreement. Shipments were sent and accepted. A disagreement as to whether a later shipment was sold to the defendant or merely consigned led to an action against the Idaho defendant in Montana court. On appeal, the Montana Supreme Court affirmed the lower court's assertion of jurisdiction over the nonresident defendant, stating "it re-

quires no discussion to conclude that the defendant transacted business within this state." 197 Mont. 293, 642 P.2d at 1065. In *Prentice Lumber,* a Montana lumber seller sued a Wisconsin buyer. In sixteen transactions between the two parties, only one was a direct order placed with the Montana seller. All other transactions were made through a sales representative working in Wisconsin on behalf of the Montana seller. The buyer paid the Montana seller directly until the Wisconsin sales representative instructed the buyer to make payments to him. The Montana Supreme Court held that the Wisconsin buyer transacted business within the state and was therefore properly within the reach of the long-arm statute. The court supported its conclusion by noting a "prevailing trend toward expanding the permissible scope of state jurisdiction over the person of nonresident defendants," and by noting that the assertion of jurisdiction complied with federal due process. 156 Mont. 68, 474 P.2d at 145.

■ Under the contract, the coal is shipped F.O.B. the Montana mine. Commonwealth Edison had accepted delivery of Decker's coal in Montana for five years prior to Edison's invocation of the force majeure provisions of the purchase agreement. The finding that Edison transacted business within the state and the assertion of jurisdiction under Mont.R.Civ.Pro. 4B(1)(a) comports with the Montana Supreme Court's reading of the long-arm statute.

**B. Due process**

■ Federal due process requires that a nonresident defendant have minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The plaintiff bears the burden of showing by a preponderance of evidence that jurisdiction is proper. *Colonial Leasing Co. v. Pugh Brothers Garage,* 735 F.2d 380, 383 (9th Cir.1984); *Data Disc, Inc. v. Systems Technology Associates,* 557 F.2d 1280, 1285 (9th Cir.1977). The constitutional test may be satisfied in either of two ways. If the defendant has "substantial" or "continuous and systematic" contacts with the forum state, general jurisdiction may be proper even if the cause of action is unrelated to the defendant's forum activities. *Data Disc, Inc.,* 557 F.2d at 1287 (citing *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 446–47, 72 S.Ct. 413, 418–19, 96 L.Ed. 485 (1952)); *see also Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781, 104 S.Ct. 1473, 1482, 79 L.Ed.2d 790 (1984). In the absence of such continuous or substantial activity, jurisdiction may nonetheless be proper as an assertion of limited jurisdiction if there is a strong relationship between the quality of the defendant's forum contacts and the cause of action. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Hirsch v. Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474 (9th Cir.1986).

■ Limited jurisdiction may be exercised when the "nature and quality" of the defendant's contacts with the forum state are significant in relation to the specific cause of action. *Data Disc, Inc.,* 557 F.2d at 1287. This determination is made using the following three-part test.

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir.1986); *Data Disc,* 557 F.2d at 1287.

### 1. Purposeful Availment

■ Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff. *Burger King*, 105 S.Ct. at 2181–82; *Hirsch*, 800 F.2d at 1480. Purposeful availment requires some kind of affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state. Thus, if the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws. *Gates Learjet*, 743 F.2d at 1331 (solicitation of distributorship agreement); *Taubler v. Giraud*, 655 F.2d 991, 994 (9th Cir.1981) (solicitation of California market by sending of wine samples). Similarly, conducting contract negotiations in the forum state will probably qualify as an invocation of the forum law's benefits and protections. *Data Disc., Inc.*, 557 F.2d at 1287–88. Making the forum state's law the governing law under the contract also meets the purposeful availing test. *Gates Learjet*, 743 F.2d at 1331.

■ Commonwealth Edison has purposefully availed itself of the privilege of doing business in Montana. Although contract negotiations took place in Nebraska, the contract expressly requires that Decker deliver the coal in Montana. Moreover, Montana performance is essential because the low-sulfur coal Edison wanted is primarily found in Montana which, together with Wyoming, contains approximately 68 percent of this nation's low-sulfur coal reserves. *See Commonwealth Edison v. Montana*, 453 U.S. 609, 638 n. 1, 101 S.Ct. 2946, 2964 n. 1, 69 L.Ed.2d 884 (Blackmun, J., dissenting) (citing H.R.Rep. No. 96–1527, pt. 1, p. 3 (1980)). Edison benefitted from Decker's mining and shipment of Montana coal because it thereby obtained the low-sulfur coal it needed for its Illinois and Indiana plants. Thus, Edison caused the transaction of business inside Montana.

### 2. Arising out of Forum-Related Activities

■ Because the contract requires the mining and shipment of coal from Montana, Edison's alleged breach of the long-term supply contract diminishes or extinguishes its need for the product of these activities. Edison argues that the claim arose in Illinois where the events leading to the invocation of the force majeure provisions occurred. Decker's claim, however, arises from the disruption of its contractual expectations under the Montana supply contract. *See Haisten*, 784 F.2d at 1400; *Hirsch*, 800 F.2d at 1481.

### 3. Reasonableness

■ Finally, the limited jurisdiction test requires that the exercise of jurisdiction be reasonable. Seven factors have emerged as relevant to this inquiry:

(1) The extent of purposeful interjection into the forum state;

(2) The burden on the defendant of defending in the forum;

(3) The extent of conflict with the sovereignty of defendant's state;

(4) The forum state's interest in adjudicating the dispute;

(5) The most efficient judicial resolution of the controversy;

(6) The importance of the forum to plaintiff's interest in convenient and effective relief;

(7) The existence of an alternative forum.

*Raffaele v. Compagnie Generale Maritime*, 707 F.2d 395, 398 (9th Cir.1983); *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266 (9th Cir.1981).

These seven factors together determine whether "under the totality of the circumstances the defendant could reasonably anticipate being called upon to present a defense in a distant forum." *Taubler v. Giraud*, 655 F.2d at 993 (9th Cir.1981). "To determine reasonableness, we consider the relative significance of each factor and balance them all." *Olsen by Sheldon v. Government of Mexico*, 729 F.2d 641, 649

(9th Cir.), *cert. denied,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984).

■ Edison has purposefully interjected itself into Montana by requiring contract performance within the state and by accepting deliveries of coal F.O.B. the Montana mine for several years under the contract prior to the invocation of the force majeure provisions.

Improvements in communication and transportation have reduced much of the historical burden of litigating in a distant forum. *Hanson v. Denckla,* 357 U.S. 235, 250–51, 78 S.Ct. 1228, 1237–38, 2 L.Ed.2d 1283 (1958); *Raffaele,* 707 F.2d at 398. The burden on Commonwealth Edison is not unreasonable.

Although sovereignty interests may carry significant weight when jurisdiction is asserted over a defendant from a foreign country, *Olsen by Sheldon,* 729 F.2d at 650, the importance of this factor with respect to state sovereignty is minimal in light of the Supreme Court's indication that the personal jurisdiction requirement is a function of the individual liberty interest protected by the due process clause rather than federalism concerns. *Insurance Corporation of Ireland v. Compagnie Des Bauxites De Guinee,* 456 U.S. 694, 702–03 n. 10, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).

The forum state's interest in adjudicating the dispute appears rather substantial given the unique location of this country's low-sulfur coal reserves. Montana's interest in business transactions that deplete its resources should provide an ample basis for weighing this factor in favor of the forum state. "The entire value of the coal, before transportation, originates in the State, and mining of the coal depletes the resource base and wealth of the State, thereby diminishing a future source of taxes and economic activity." *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 624, 101 S.Ct. 2946, 2957, 69 L.Ed.2d 884 (1981).

An efficient resolution of the controversy can be obtained in either state. The cir-cumstances leading to Edison's decision to invoke the force majeure provisions occurred at their plants in Illinois and Indiana but Decker's injury occurred in Montana. "A court sitting in the district where the injury occurred and where the evidence is located ordinarily will be the most efficient forum." *Olsen by Sheldon,* 729 F.2d at 650.

Montana offers the most convenient and effective forum to the plaintiff because Montana is where Decker suffered injury and disruption.

As to the existence of an alternate forum, Edison is clearly amenable to suit in Illinois and has already filed suit there but this factor cannot overcome the others which favor Montana jurisdiction.

In sum, the exercise of Montana jurisdiction is reasonable. We conclude that the district court properly exercised limited jurisdiction over Edison in Montana. Accordingly, we need not consider whether there was general jurisdiction over Edison.

## II. Venue

■ Because the only basis for federal subject matter jurisdiction in this case is diversity of citizenship, the applicable venue statute is 28 U.S.C. § 1391(a). It allows venue "only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." We review venue determinations de novo as a question of law. *Cf. Central Valley Typographical Union No. 46 v. McClatchy Newspapers,* 762 F.2d 741, 745 (9th Cir.1985). We hold that Montana venue is proper because Decker Coal is a resident of Montana and the claim arose there.

■ Residence for purpose of venue can be the residence of the partnership entity rather than exclusively that of its individual members. *Denver & Rio Grande Western Railroad v. Brotherhood of Railroad Trainmen,* 387 U.S. 556, 559–60, 87 S.Ct. 1746, 1748, 18 L.Ed.2d 954 (1967) (the residence of an unincorporated association for purposes of 28 U.S.C. § 1391(b) is the residence of the association

itself). Courts have analogized partnerships and associations to corporations in making venue determinations. *See id.* at 562, 87 S.Ct. at 1750; *Varsic v. U.S. District Court for the Central District of California,* 607 F.2d 245, 248 (9th Cir.1979) (quoting *Braun v. Berenson,* 432 F.2d 538, 544 (5th Cir.1970), which, in construing the federal antitrust venue provision, 15 U.S.C. § 15, analogized an unincorporated association to a corporation). Where a corporation engages in only one business activity, substantially all of whose operations occur in one state, the state of operations is the corporation's principal place of business even if policy and administrative decisions are made elsewhere. *Bialac v. Harsh Building Co.,* 463 F.2d 1185, 1186 (9th Cir.), *cert. denied,* 409 U.S. 1060, 93 S.Ct. 558, 34 L.Ed.2d 512 (1972).

■ All of Decker's employees, coal properties, mining equipment and supplies are located at the mine in Montana. Montana managers supervise and control of the day-to-day mining operations. Only sales and accounting functions take place out of state and these services are performed under the supervision of a management committee which usually meets at the mine in Montana. Therefore, Montana is Decker's principal place of business and residence for purposes of 28 U.S.C. § 1391(a).

■ Furthermore, the claim arose in Montana. A claim arises in any district in which a substantial part of the acts, events, or omissions occurred that gave rise to the claim. *Sutain v. Shapiro and Liebeman,* 678 F.2d 115, 117 (9th Cir.1982). Edison argues that the event giving rise to the claim was its transmittal of notice invoking the force majeure clause, therefore, the claim arose in Illinois. Decker Coal contends that the claim arose at the place of intended performance which, under the contract, was Montana. This circuit has never ruled on the precise issue of whether breach of contract occurs at the place of repudiation or performance. The overriding purpose of § 1391(a) is to further the convenience of the parties. *See Gardner Engineering Corp. v. Page Engineer-*

*ing Co.,* 484 F.2d 27, 33 (8th Cir.1973). We believe that the spirit of § 1391(a) is better served in this case if venue for a claim based on breach of contract be the place of intended performance rather than the place of repudiation. *American Carpet Mills v. Gunny Corp.,* 649 F.2d 1056, 1059 (5th Cir.1981); *Gardner,* 484 F.2d at 33. We favor this rule because the place of performance is determined at the inception of the contract and therefore parties can anticipate where they may be sued. Furthermore, the place of performance is likely to have a close nexus to the underlying events. The rule proposed by Edison, on the other hand, invites forum shopping. Under that rule a party could force removal to any district court in America simply by repudiating the contract in that state.

Edison argues that Illinois is a more convenient forum because the trial will inevitably focus on whether Edison properly invoked the force majeure clause. Since the claimed force majeure events occurred in Illinois and Indiana, it is argued, Illinois is a more convenient forum. Although availability of witnesses and access to evidence is a factor in determining venue, it does not control. The determinative factors are set out in the statute: residence of the parties or situs of the claim. We hold that Montana venue is proper under either factor. An argument based on convenience alone is more appropriate in a § 1404 change of venue motion. Transfer or dismissal in favor of a more convenient forum lie within the discretion of the trial court and we consider that issue in the next section.

### III. Denial of Motion to Transfer

■ Edison argues that, even if venue was technically proper in Montana, the trial court erred in denying Edison's motion to transfer. We review the district court's denial of transfer motion for an abuse of discretion. *J–R Distributors, Inc. v. Eikenberry,* 725 F.2d 482, 485 n. 3 (9th Cir. 1984), *rev'd. on other grounds sub nom., Brocket v. Spokane Arcades, Inc.,* 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This statute partially displaces the common law doctrine of *forum non conveniens. Miskow v. Boeing Co.,* 664 F.2d 205, 207, (9th Cir.1981), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 2717, 72 L.Ed.2d 138 (1982) (the statute only applies to transfers between federal district courts). Nonetheless, *forum non conveniens* considerations are helpful in deciding a § 1404 transfer motion. In the former case a court must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum. *Mizokami Bros. of Arizona v. Mobay Chemical Corp.,* 660 F.2d 712, 718 (8th Cir.1981); *Continental Oil Co. v. Atwood & Morrill Co.,* 265 F.Supp. 692, 699 (D.Mont.1967). The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. *Id.* As part of this inquiry, the court should consider private and public interest factors affecting the convenience of the forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981). Private factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Public factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper*

*Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 (quoting *Gulf Oil Corp.,* 330 U.S. at 509, 67 S.Ct. at 843).

Edison will defend on the ground that the problems at their Illinois and Indiana plants were sufficient to invoke the force majeure provision of the contract. It argues that the Illinois forum is more convenient because it is closer to witnesses and to the plants in case they must be viewed by the jury. We do not feel that these factors are sufficient to help Edison. Although the liability witnesses may be located in Illinois and Indiana, the damage witnesses primarily reside in Montana. The transfer would merely shift rather than eliminate the inconvenience. Furthermore, the public factors weigh in favor of Montana since that is where the claim arose. The district court concluded that it would be unnecessary for a jury to view the Illinois and Indiana plants and that "[o]n balance, factors relating to plaintiffs choice of forum, convenience of witnesses and interests of justice weigh in favor of plaintiff." The court did not abuse its discretion in so holding.

## IV. Injunction of Later-Filed Illinois Action

Edison contends that the district court abused its discretion by enjoining prosecution of Edison's action in the Northern District of Illinois filed nine days after Decker filed its action in Montana. A grant or denial of injunctive relief will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Colorado River Indian Tribes v. Town of Parker,* 776 F.2d 846, 849 (9th Cir.1985.

When a district court has jurisdiction over all parties involved, it may enjoin later filed actions. *United States v. Oregon,* 657 F.2d 1009, 1016 n. 17 (9th Cir. 1981); *Seattle Totems Hockey Club, Inc. v. International Hockey League,* 652 F.2d 852, 854–56 (9th Cir.1981), *cert. denied sub nom., Northwest Sports Enterprises v. Se-*

844

*attle Totems Hockey Club*, 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1313 (1982); *see e.g., Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 185–86, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952). "[T]his 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

▪ Because the Montana district court properly exercised personal jurisdiction over Edison, the cause of action arose in Montana, and Montana venue prevails, we hold that the trial court exercised sound judicial discretion in enjoining the later filed Illinois action.

For these reasons the judgment and determinations of the District Court are

AFFIRMED.