**DUAL LOCK PARTITION SYSTEMS, INC., an Oregon corporation, Plaintiff,**

v.

**RIDGEVIEW GLASS, INC., a Maryland corporation, and Bonnie J. Canter, Defendants.**

Civ. No. 94–1433–FR.

United States District Court, D. Oregon.

March 6, 1995.

Ronald H. Hoevet, Cynthia Halse Stutsman, Hoevet & Snyder, P.C., Portland, OR, for plaintiff.

Kenneth S. Antell, O'Malley & Antell, Portland, OR, for defendants.

## OPINION

FRYE, District Judge:

The matter before the court is the motion of the defendants, Ridgeview Glass, Inc. and Bonnie J. Canter, to dismiss this action for lack of personal jurisdiction (# 8–1) or, in the alternative, to transfer this action to a more convenient forum (# 8–2).

## BACKGROUND

Plaintiff, Dual Lock Partition Systems, Inc. (Dual Lock), an Oregon corporation, filed this action for breach of contract against defendants, Ridgeview Glass, Inc. (Ridgeview), a Maryland corporation, and its treasurer, Bonnie J. Canter, in the Circuit Court of the State of Oregon for the County of Multnomah. Ridgeview removed the action to this court on the basis of diversity of citizenship and now moves the court to dismiss the action for lack of personal jurisdiction or, in the alternative, to transfer the action to the United States District Court for the District of Maryland.

## ALLEGED FACTS

Ridgeview is a commercial window and door frame installer located in Upper Marlboro, Maryland. Ridgeview conducts business in the State of Maryland, the District of Columbia, and the northern part of the State of Virginia. Ridgeview employs thirty-one employees—sometimes more and sometimes less—and has annual sales of approximately 3.2 million dollars. Ridgeview does not have a registered agent for service of process in the federal District of Oregon and does not own any real or personal property in the State of Oregon. Ridgeview has never been involved in a construction project, maintained a telephone number, or advertised in the State of Oregon. Bonnie J. Canter has never visited the State of Oregon, does not now and has never owned any real or personal property in the State of Oregon, and has never been involved in a construction project which has required her to come to the State of Oregon.

On or about March 15, 1994, Ridgeview entered into a contract with Donohoe Construction Company (Donohoe) to supply and to install windows, window frames, door frames, and other items for Donohoe on a project known as the United States Department of Agriculture Center at Riverside, which is located in Riverdale, Maryland (the Project).

Rick Carleton is the Vice–President of Marketing and Sales for Dual Lock. The office of the Vice–President of Marketing and Sales for Dual Lock is located in Atlanta, Georgia, and Carleton is the only employee in the office. In early July of 1994, at the request of Tom Rolando, the architect on the Project, Carleton provided information to Donohoe regarding Dual Lock's ability to supply the aluminum door and window frames which were needed for the Project. On or about July 11, 1994, Ridgeview received a directive from Donohoe that the designated supplier for the aluminum door and window frames needed for the Project would be Dual Lock of Portland, Oregon. Shortly thereafter, Andy Canter, Jr., the Director of Operations for Ridgeview, contacted Carleton. On July 12, 1994, Patrick Hartford, Project Manager for Ridgeview in the District of Maryland, faxed to Carleton in the State of Georgia a request for a quotation. Carleton completed the quotation and faxed it to the office of Dual Lock in Portland, Oregon for review and finalization. Carleton explained to Andy Canter that once a quotation was accepted by Dual Lock, all of the shop drawings, manufacturing and processing of Ridgeview's order would be handled by Dual Lock in Portland, Oregon.

Bonnie Canter describes the negotiations between Ridgeview and Dual Lock as follows:

8. On or about July 14, 1994, Ridgeview's Project manager, Pat Hartford, contacted Dual Lock to obtain specification and cost information for the materials for the Project. On or about July 15, 1994, Ridgeview issued a purchase order for shop drawings from Dual Lock. By July 18, 1994, I had discussed the matter with Clem Grant ("Grant") at Dual Lock. Dual Lock contacted me and indicated a check

for $3,600 was necessary to proceed with shop drawings. Dual Lock at that time supplied Ridgeview with a credit application and related documents. Ridgeview completed the forms and returned them to Dual Lock on or about July 18, 1994. On or about the same date, Ridgeview sent a check to Dual Lock in the amount of $3,600. Included in the completed credit application were several credit references for Ridgeview.

Affidavit of Bonnie J. Canter in Support of Defendants' Motion to Dismiss, p. 3.

On or about July 29, 1994, Ridgeview submitted the completed credit application to Dual Lock in Portland, Oregon. The credit application was signed and personally guaranteed by Bonnie Canter. On or about the same day, Dual Lock received architectural drawings and a signed purchase order from Ridgeview. Clem Grant, the president of Dual Lock, agreed to a $20,000 credit extension for Ridgeview. Grant told Andy Canter that Dual Lock would need to verify Ridgeview's credit references, but that Dual Lock would begin the shop drawings for the Project once it received a deposit of $12,500 from Ridgeview.

On August 2, 1994, Ridgeview sent a deposit of $12,500 to Dual Lock. "Over the course of approximately the next two months, Ridgeview, Donohoe, and Dual Lock had numerous conversations concerning the materials Dual Lock was to deliver, the cost of the materials, and its schedule for delivery.... There were numerous discussions between Ridgeview and Dual Lock during this time period." Affidavit of Bonnie J. Canter in Support of Defendants' Motion to Dismiss, p. 5.

On August 8, 1994, Grant faxed to Ridgeview a revised sales quotation which reflected the numerous changes that Ridgeview had made to its original order. The changes increased the cost from $36,461 to $53,886.

On September 27, 1994, Dual Lock withdrew its extension of credit based upon Ridgeview's credit history. On September 28, 1994, Bonnie Canter requested that Dual Lock further review Ridgeview's credit references. Bonnie Canter also participated in a conference call with Grant and Richard White, a representative of the company who had not given Ridgeview a favorable credit reference.

On September 29, 1994, Dual Lock advised Ridgeview that the portion of the order for which Ridgeview had requested early shipment was completed. Dual Lock requested payment of $22,768 from Ridgeview before releasing the order for shipment. On or about October 3, 1994, Andy Canter notified Dual Lock that Ridgeview was canceling the order. The product that Dual Lock manufactured for Ridgeview is stored at Dual Lock's headquarters in Portland, Oregon.

## APPLICABLE LAW

■ "In order to establish the existence of personal jurisdiction in a diversity case, the plaintiff must show (1) that the statute of the forum confers personal jurisdiction over the nonresident defendant, and (2) that the exercise of jurisdiction accords with federal constitutional principles of due process." *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir.1987). The law of the State of Oregon permits a court to exercise jurisdiction over any party so long as "prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States." Or. R.Civ.P. 4L. Oregon's long-arm statute is thus coextensive with the limits of due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir.1990).

■ When the activities of the defendant are "continuous and systematic" or "substantial," a state may exercise general personal jurisdiction without offending due process. *Lake v. Lake, supra*, 817 F.2d at 1420 (citing *Perkins v. Benquet Consol. Mining Co.*, 342 U.S. 437, 445, 447, 72 S.Ct. 413, 419, 96 L.Ed. 485 (1952)).

■ The United States Court of Appeals for the Ninth Circuit uses a three-part test for determining limited jurisdiction: "1) the nonresident defendant must have *purposefully availed* himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must *arise out of* or result from the defendant's

forum related activities; and 3) exercise of jurisdiction must be *reasonable."* *Roth v. Garcia Marquez,* 942 F.2d 617, 620–21 (9th Cir.1991) (emphasis in original). The plaintiff must establish each of these factors for jurisdiction to lie. *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 817 n. 10 (9th Cir.1988); *see also Haisten v. Grass Valley Medical Reimbursement Fund Ltd.,* 784 F.2d 1392, 1397 (9th Cir.1986) (plaintiff bears burden of proving jurisdiction).

## ANALYSIS AND RULING

### 1. *Personal Jurisdiction*

■ The parties agree that Ridgeview and Bonnie Canter do not have the substantial and continuous contacts with the State of Oregon necessary for this court to exercise general personal jurisdiction over them. However, Dual Lock contends that Ridgeview and Bonnie Canter have had the minimum contacts with the State of Oregon necessary for this court to exercise limited personal jurisdiction over them in this action for breach of contract. Accordingly, the court will apply the three-prong test set out above to determine whether the court may exercise personal jurisdiction over Ridgeview and Bonnie Canter in this action.

#### A. *Purposeful Availment*

As the United States Court of Appeals for the Ninth Circuit explained:

> Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff. In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of *affirmative conduct which allows or promotes the transaction of business within the forum state.*

*Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir.1988) (citations omitted and emphasis added).

Dual Lock contends that Ridgeview and Bonnie Canter purposefully availed themselves of the privilege of conducting business in the State of Oregon by initiating contract negotiations and subsequently entering into a contract for the design and manufacture of windows, window frames, doors and door frames with a business whose headquarters are in the State of Oregon and which has been incorporated in the State of Oregon, thereby knowing that the goods would be produced in the State of Oregon for delivery to the State of Maryland. Ridgeview and Bonnie Canter do not dispute that they have a contract with Dual Lock for the purchase of goods to be specially manufactured in the State of Oregon; however, they contend that they did not purposefully avail themselves of the privilege of conducting business in the State of Oregon because their subcontract with Donohoe required them to purchase the windows, window frames, and door frames from Dual Lock of Portland, Oregon.

■ A contract with a resident of the forum state is insufficient by itself to confer personal jurisdiction over the nonresident. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985). However, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are factors that may establish purposeful availment. *Id.* at 479, 105 S.Ct. at 2185. Here, Ridgeview initiated contract negotiations with Dual Lock by contacting Dual Lock's sales representative in Atlanta, Georgia. After the initial quote was finalized by Dual Lock in Portland, Oregon and accepted by Ridgeview, all further dealings between the parties were handled exclusively through Dual Lock's headquarters in Portland, Oregon. Ridgeview and Dual Lock negotiated the contract by telephone, fax and the mail. The contract obligated Dual Lock to design and manufacture windows, window frames, and door frames according to Ridgeview's specifications. Although the contract did not require Dual Lock to manufacture the goods in the State of Oregon, Ridgeview knew that the goods would be manufactured in the State of Oregon. In other words, the affirmative conduct of Ridgeview and its treasurer, Bonnie Canter, who participated in contract negotiations and personally guaranteed the obligations of Ridgeview, promoted and allowed the transaction of business in the

State of Oregon. Such affirmative conduct constitutes purposeful availment.

Ridgeview and Bonnie Canter rely on the decision of the United States Court of Appeals for the Fifth Circuit in *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026 (5th Cir.1983), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984), for the proposition that limited personal jurisdiction over them does not exist in this action. In *Hydrokinetics,* the non-resident corporation had agreed to purchase goods to be manufactured in the forum state, payment for the orders was to be made in the forum state, extensive communications were exchanged between the parties in their respective states, officers of the non-resident corporation visited the forum state to close the deal, and the contract was formally created by the defendant's acceptance in the forum state. The court, however, determined that it did not have limited personal jurisdiction over the non-resident corporation because the contract required no significant performance by the defendant in the forum state. The contract involved only one transaction, there was a choice of law provision for the state of residence of the defendant, and the plaintiff had approached the defendant and substantially negotiated the contract in the state of the residence of the defendant.

■ The decision in *Hydrokinetics* is distinguishable from the facts of this case. Here, there is no choice of law provision in the contract. Ridgeview initiated the contract negotiations outside of the State of Maryland, its forum state, and Ridgeview participated in the production of the goods by forwarding its specifications, on more than one occasion, to Dual Lock's headquarters in Portland, Oregon. Although the contract between Ridgeview and Dual Lock involved purchase orders for the same construction project, the parties were involved in negotiations and a course of dealing under the contract from July through September of 1994. The course of dealing between Ridgeview, Bonnie Canter, and Dual Lock resulted in substantial economic consequences in the

State of Oregon because Dual Lock specially manufactured goods representing a substantial portion of Ridgeview's purchase order. Those goods remain in Portland, Oregon. In view of the quality and nature of the contact that Ridgeview and Bonnie Canter had with the State of Oregon through the negotiation and execution of the contract with Dual Lock and Bonnie Canter's personal guarantee of Ridgeview's obligations, the court concludes that Ridgeview and Bonnie Canter [1] purposefully availed themselves of the privilege of conducting business within the State of Oregon.

B. *Arising out of Forum Related Activities*

The dispute before the court arises from the activities of Ridgeview in initiating contract negotiations and entering into a contract with Dual Lock, a business incorporated in the State of Oregon with its headquarters in Portland, Oregon, for the manufacture of specially ordered goods. In its claim for breach of contract, Dual Lock alleges that Ridgeview breached the contract by canceling its purchase order after Dual Lock had completed the manufacture of a substantial portion of the purchase order. Dual Lock's claim against Bonnie Canter also arises from her contacts with the State of Oregon when she personally guaranteed Ridgeview's obligations under its contract with Dual Lock. In its second claim for relief, Dual Lock alleges that Bonnie Canter is responsible for the obligations of Ridgeview under the contract with Dual Lock because of her personal guarantee.

C. *Reasonableness*

The following factors are relevant to a determination of the reasonableness of exercising limited jurisdiction over a non-resident:

1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's

---

**1.** A non-resident defendant's personal guarantee, if relied upon by the plaintiff and which creates substantial economic consequences in the forum state, will support the exercise of personal jurisdiction. *White Stag Mfg. Co. v. Wind Surfing, Inc.,* 67 Or.App. 459, 679 P.2d 312 (1984).

interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

*Roth v. Garcia Marquez, supra,* 942 F.2d at 623.

■ "Once purposeful availment has been established, the forum's exercise of jurisdiction is *presumptively reasonable.* To rebut that presumption, a defendant must present a *compelling* case that the exercise of jurisdiction would, in fact, be unreasonable." *Id.* at 625 (internal quotation marks omitted and emphasis in original). Because Ridgeview and Bonnie Canter purposefully availed themselves of the privilege of doing business in the State of Oregon, they have the burden of showing that the exercise of jurisdiction would be unreasonable. *See Hoag v. Sweetwater Int'l,* 857 F.Supp. 1420 (D.Nev.1994). The State of Oregon has a " 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King, supra,* 471 U.S. at 472, 105 S.Ct. at 2182.

The court concludes that Ridgeview and Bonnie Canter have not made a sufficient showing that defending this action in the State of Oregon would be unduly burdensome, that it would be that much more convenient to try this action in another forum, or that there is a conflict of laws with another state which outweighs the interests of the State of Oregon. The requirement of purposeful interjection is analogous to the requirement of purposeful availment, and the factors discussed by the court in that section of the opinion are relevant here as well. Balancing the seven factors set out above, the court concludes that the exercise of personal jurisdiction over Ridgeview and Bonnie Canter in this action is reasonable.

After applying the three-part test for the exercise of limited personal jurisdiction to the facts of this case, the court concludes that the exercise of limited personal jurisdiction is consistent with due process. Accordingly, the motion of Ridgeview and Bonnie Canter to dismiss for lack of personal jurisdiction is denied.

## 2. *Motion to Transfer*

Ridgeview and Bonnie Canter move the court to transfer this action to a more convenient forum. The defendants must "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986).

■ In considering a motion to transfer to a more convenient forum, the court must weigh both public and private factors. Public factors include the interest in having a diversity case tried in the district court where the law which governs the dispute applies, thereby avoiding unnecessary conflict of law problems and avoiding application of foreign law and unfairness of burdening citizens in another forum with jury duty. *Id.* Private factors include ease of access to proof, availability of willing and unwilling witnesses, and any other practical problems that make trial of this matter easy, expeditious and inexpensive. *Id.*

■ Here, Ridgeview and Bonnie Canter contend that the District of Maryland would be a more convenient forum because six of their potential witnesses reside in the State of Maryland, and four additional witnesses reside in the surrounding areas. They also contend that all of their relevant documents are located in the District of Maryland.

Dual Lock contends that the District of Maryland is not a more convenient forum because the goods which were manufactured pursuant to the contract and two of its chief witnesses are located in the State of Oregon, and a third witness has agreed to be available for proceedings in the State of Oregon. Additionally, Dual Lock argues that all of its damages evidence is located in the State of Oregon. Dual Lock also contends that the contract laws of the State of Oregon govern this dispute.

Both parties have liability witnesses in their respective states of residence. However, most of the witnesses who will testify as to damages reside in the State of Oregon, and the contract goods are located in the State of Oregon. Ridgeview does not contend that its witnesses are unwilling to testi-

fy in this forum. The court is persuaded that a transfer of this case to the District of Maryland "would merely shift rather than eliminate the inconvenience." *Decker Coal, supra,* 805 F.2d at 843. Accordingly, the motion of Ridgeview and Bonnie Canter to transfer this action to a more convenient forum is denied.

## CONCLUSION

The motion of Ridgeview and Bonnie Canter to dismiss this action for lack of personal jurisdiction (# 8–1) or, in the alternative, to transfer this action to a more convenient forum (# 8–2) is denied.