**TELEPHONE MANAGEMENT CORPORATION, an Oregon corporation, Plaintiff,**

v.

**THE GOODYEAR TIRE & RUBBER COMPANY, an Ohio company, Defendant.**

**No. Civ. 98–31–FR.**

United States District Court, D. Oregon.

May 6, 1998.

Gary Roberts, Schwabe, Williamson & Wyatt, P.C., Portland, OR, Robert J. Yorio, James W. Lucey, Carr & Ferrell LLP, Palo Alto, CA, for Plaintiff.

John D. Ostrander, Robert E.L. Bonaparte, Bonaparte, Elliott, Ostrander & Preston, P.C., Portland, OR, for Defendant.

## OPINION

FRYE, District Judge.

In this breach of contract action, the plaintiff, Telephone Management Corporation (TMC), alleges that the defendant, The Goodyear Tire & Rubber Company (Goodyear), breached a contract in which Goodyear promised to compensate TMC for obtaining reduced telephone rates for Goodyear. Before the court is Goodyear's motion to transfer (change venue) (# 12).

## ALLEGED FACTS

TMC analyzes the telephone billings and other services provided to large companies, creates proprietary plans for cost savings to these companies based upon these analyses, and is compensated for its services based upon the percentage of cost savings, refunds, or credits the large companies receive as a result of TMC's recommendations. TMC entered into a contract with Goodyear on June 18, 1992 to provide this service to Goodyear. Goodyear also agreed to allow TMC to audit Goodyear's telephone billings in order to establish the amount of savings that could be obtained on its telephone services.

In October of 1994, Goodyear asked TMC to assist it in obtaining further cost savings on the telecommunication rates that Goodyear had unilaterally negotiated with AT & T. Goodyear told TMC that it was not involved in any ongoing negotiations or discussions with telecommunication vendors. TMC gave Goodyear additional analyses and recommendations for Goodyear's telecommunications traffic. During 1995, TMC repeatedly contacted Goodyear to determine what use Goodyear had made of TMC's recommendations. On January 3, 1996, TMC formally asked Goodyear to let TMC audit Goodyear's telephone billings from October 1994 onward, as provided under the contract. On January 11, 1996, Goodyear terminated its contract with TMC.

TMC believes that Goodyear used the recommendations of TMC to achieve increased savings after October of 1994 and then unilaterally negotiated a more advantageous contract with AT & T in March of 1996. TMC has not received any payments on the savings that it believes Goodyear obtained based on its recommendations.

TMC alleges claims for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, misrepresentation, and misappropriation of trade secrets.

## CONTENTIONS OF THE PARTIES

Goodyear contends that this action should be transferred to the Northern District of Ohio because the laws of the State of Ohio govern this action, and all of the documents, the third-party witnesses, and the witnesses that Goodyear intends to call at trial are located in the Northern District of Ohio.

TMC contends that this action should remain in the District of Oregon because its choice of forum should be respected; most of TMC's witnesses are located in the State of Oregon; the documents located in the State of Ohio can easily be reproduced on CD–ROM and brought to the State of Oregon; and TMC, a small company, will suffer financial hardship if its principals have to travel to the State of Ohio for a month-long trial.

## LEGAL STANDARDS

28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

## ANALYSIS AND RULING

The purpose of section 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The court must balance the preference given to the plaintiff's choice of forum with the burden of litigating in an inconvenient forum. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986). The

defendant has the burden of making a strong showing of inconvenience before a transfer is allowed. The private factors considered by the court include the:

relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 843 (quotation omitted). The public factors include:

the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (quotation omitted).

■ Goodyear contends that the following facts demonstrate that this action should be transferred to the Northern District of Ohio. An independent contractor, John Marlowe, approached Goodyear at its head office in the State of Ohio to solicit business for TMC. Joseph Gilchrist, Goodyear's former assistant comptroller of information services who was involved with the TMC contract, has retired and lives in the State of Ohio. Joseph Gilchrist suffers from severe health problems which would make it an extreme hardship for him to travel to the State of Oregon. Goodyear's former manager of corporate telecommunications, Earl Jobe, has retired and lives in the State of Ohio. He was the principal negotiator of the 1994 contract between Goodyear and AT & T. Earl Jobe states under oath that all of Goodyear's records which TMC wishes to audit are located in the Northern District of Ohio and are voluminous. Richard Robson, who reported to Jobe and was the Goodyear employee who worked on a daily basis with TMC, has retired and lives in the State of Ohio. Robert Boberg, the principal negotiator on behalf of AT & T during the 1994 negotiations, lives in the Northern District of Ohio. All AT & T documents relating to those negotiations are located in the Northern District of Ohio. Two other AT & T employees who were negotiators along with Boberg live in the Northern District of Ohio, and a third, Barbara Riddic, lives in Atlanta, Georgia.

TMC contends that many factors should persuade the court to respect its choice of forum. TMC is a small company with nine employees and four officers. All of its documents relating to the negotiation and performance of the contract with Goodyear are located in the State of Oregon. Thomas Morency, chief executive officer of TMC who lives in the State of Oregon, was the primary contact with Goodyear. No employee of TMC ever went to the State of Ohio to perform the contract; their work was all done in the State of Oregon. Fred Accuardi, president of TMC who lives in the State of Oregon, and Janis Hoyer, a former TMC employee who also lives in the State of Oregon, analyzed Goodyear's telecommunication traffic and billing patterns. Thomas Morency states that it would be an extreme hardship for the three principals of TMC—Rengo, Accuardi, and himself, to attend a three to four week trial in the State of Ohio because the company would not be able to produce any revenue without the presence of these three employees in the State of Oregon. Morency also contends that Goodyear's billing records, which TMC wishes to audit, can be produced with a few hundred pieces of paper and computer-readable CD–ROMs.

There are also the following neutral factors: (1) the contract between TMC and Goodyear was negotiated in writing or by telephone with TMC's personnel all remaining in the State of Oregon and all of Goodyear's personnel remaining in the State of Ohio; and (2) Robert Rengo, chairman of the board of TMC, lives in the State of California and, thus, will have to travel in any event.

TMC alleges that Goodyear used TMC's recommendations to its advantage when Goodyear unilaterally negotiated with AT & T in 1996. TMC also claims that it was not fully compensated for the result of its recom-

mendations to Goodyear in 1994. The claims do not concern TMC's performance.

Turning to the private factors listed in *Decker Coal*, there are witnesses located in both forums. Three of Goodyear's witnesses—Gilchrist, Jobe, and Robson—are retired. All three live in the State of Ohio. Gilchrist is too ill to travel to the State of Oregon. Because Jobe and Robson are retired, Goodyear cannot require them to appear at trial in the State of Oregon, and this court cannot subpoena them to the State of Oregon. Three of AT & T's witnesses, including the primary one, live in the Northern District of Ohio and could be subpoenaed to a trial in the Northern District of Ohio but not to a trial in the District of Oregon. One AT & T witness lives in the State of Georgia. Three of TMC's witnesses—Morency, Accuardi, and Hoyer—live in the State of Oregon. Hoyer, a former employee of TMC, cannot be required by TMC to travel to the State of Ohio, but this court could subpoena her to a trial conducted in the State of Oregon. Rengo, another TMC witness, lives in the State of California and so will have to travel to either forum. Either court could require TMC to produce Morency, Accuardi, and Rengo at trial.

As a company much larger than TMC, Goodyear can more easily afford the expense of having its witnesses appear in a distant forum and will not suffer as much hardship if its employees travel. Moreover, the three Goodyear employees at issue are now retired. However, in the court's experience, this case should not take three to four weeks to try. Furthermore, there would be no need for all three of the principals of TMC to attend the entire trial. When none of the principals of a corporation are testifying, only one corporate representative typically attends a trial. That would lessen the hardship on TMC because two of its revenue-producing employees would be available for work. There is no need for a jury view in this case. Although it may be true that Goodyear's documents can be produced on CD–ROMs, alleviating the need for a large volume of paper to travel across this country, the Goodyear and AT & T documents are located in the Northern District of Ohio, while the TMC documents are located in the District of Oregon. At issue here are the negotiations between Goodyear and AT & T. Thus, TMC's documents are less relevant to the action. Taking all of these private factors into consideration, the Northern District of Ohio would be the better forum for the trial of this action.

Considering the public factors, both forums have an interest in this action. The State of Ohio has an interest in the ability of its corporations being able to terminate contracts and to continue with their business dealings. The State of Oregon has an interest in the ability of its corporations being compensated for the work that they perform in other forums. The parties do not agree as to which states' laws should be applied, but they do not make a convincing showing that the law of breach of contract and of the torts alleged differs between the states. The public factors do not indicate which forum is the more convenient.

Based on the location of the witnesses and the documents, the court finds that Goodyear has made the required strong showing of inconvenience to persuade this court that the action should be transferred to the Northern District of Ohio for all further proceedings.

**CONCLUSION**

Goodyear's motion to transfer (change venue) (# 12) is granted. This action is transferred to the Northern District of Ohio for all further proceedings.