[Civ. No. 14911. First Dist., Div. One. Apr. 15, 1952.]

BERNARD LASSALLETTE, Appellant, v. PARISIAN BAKING COMPANY (a Corporation) et al., Respondents.

William Petros for Appellant.

W. P. Caubu for Respondents.

WOOD (Fred B.), J.—The answer to the sole question upon this appeal depends upon the meaning of "book value" as used in a by-law of the defendant corporation.

The by-law requires the holder of any of the corporate shares, desiring to sell them, first to offer them to the corporation "at the net book value of the assets, that is, plant investment, inventories, accounts receivable, cash and other assets, less debts and liabilities and suitable reserves for depreciation or otherwise, plus $25,000.00 for the good will of the business. . . ."

The trial court found that the "book value of the shares of stock of said company as determined" by the by-law "is that set forth on the books of the Corporation," and that in accordance with the by-law the "book value of each share of stock of said Corporation is to be determined by adding the par value of all of the outstanding shares of stock to the surplus of the Corporation as shown on its financial statement and dividing the total so obtained by the number of shares of stock outstanding."

Plaintiff has appealed from the judgment which was based upon this finding. He claims that the court's interpretation is against the evidence and against the law. He contends that the by-law requires that the "book value" of each share be determined by taking the "market value of the assets" of the corporation, "deducting its liabilities," and dividing the remainder by the number of shares.

Our reading of the by-law and consideration of the evidence adduced upon the trial convinces us that the trial court's interpretation is correct.

The problem is that of ascertaining the intent of the shareholders when they formulated and adopted this by-law, ascertained by an analysis of the words they wrote into the document and aided by consideration of the significant surrounding

circumstances and the construction, if any, which they put upon it before the controversy arose. ■ In conducting this inquiry we must bear in mind the fact that the law does not define "book value" as denoting a particular method of arriving at the value of fixed or other assets of a corporation. It may be market value, cost less depreciation, or other concept of value recognized by sound accounting practice and used by the particular corporation in recording its financial transactions. (See discussion in Ballantine, California Corporation Laws, 1949 ed., p. 185, § 137, and authorities cited.)

■ We start with a reading of the by-law. It contains a definition of a sort. The very words "plant investment . . . less . . . reserves for depreciation . . ." denote valuation of the fixed assets at cost less depreciation, and that is the way the books of this corporation were kept, both before and after the individual parties to this action acquired control. The corporation commenced business about 1906. In 1944 plaintiff and the four individual defendants bought all of the issued shares, 230 in number, each of the five taking 46 shares. Shortly thereafter, they adopted the by-law in question. The December 31, 1949, balance sheet, under "plant investment," shows (1) real estate, $45,000, which the testimony shows represents cost; (2) building, depreciated cost, $4,105.40; (3) machinery and equipment, $15,831.16, autos and trucks, $18,075.60, office electrical equipment, $914.97, amounting to $34,821.73, less $22,705.37 as a reserve for depreciation, a net value of $12,116.36; and (4) a resultant entry of "net plant investment," $61,221.76.

Other assets (cash on hand and in bank, accounts receivable, prepaid insurance, and flour on hand) bring this figure up to $91,793.88, "total assets." The deduction of liabilities in the form of accrued vacation pay and tax reserves ($7,740.69), leaves $84,053.19 allocated to capital and surplus, which were entered on the books as follows: Capital stock (230 shares, par $100) $23,000; surplus at the beginning of the year $62,825.50, less dividends paid $20,240, plus 1949 profit $18,467.69, showing $61,053.19 as the surplus at the end of the year. The per share book value would, of course, be ascertained by dividing the total amount of capital and surplus by the number of shares, 230.

A certified public accountant, who has been accountant for the corporation since 1941, testified that he carried forward

the values he found on the books after checking various records to determine the accuracy of the book entries, continuing with the cost less depreciation method which had been previously adopted and followed. He made no changes in policy, merely some changes in method, such as carrying depreciation of machinery, equipment, autos and trucks in a separate account instead of directly diminishing the cost values of those items. Nothing had been set up for good will. He continued the policy of not doing so. (That policy ·is reflected by the by-law in question. It calls for the addition of $25,000 for good will, after ascertaining the book value, in fixing the price of shares for sale to the corporation.) The accountant further testified that book value is the value set up by a particular company to express the policy and method it uses in stating what its financial and operating activities are; different companies have different policies and methods; there is no one set rule of book values; this company's system is cost less depreciation; it is one of the many systems used by various corporations; under this company's system, deduction of liabilities from the depreciated assets gives the net worth; net worth is made up of capital stock and of surplus less dividends paid, which amount divided by the number of shares gives the book value of each share of stock outstanding.

Plaintiff, ignoring these factors and the plain meaning of the words, used in the by-law, insists that "book value" is determined by the "market value" of the assets less the liabilities of the corporation. By this method he values the land and building at $99,500. He would add $25,000 for five ovens, which the corporation treats as a part of the building; $48,000 for eight delivery routes, for which the books carry no entry, the routes being treated as the principal element of the good will of the business. He builds up a valuation in excess of $200,000 by a method not in accord with the requirements of the by-law. He does not suggest that the corporation's book entries are inaccurate when viewed as the recordation of the cost of the land, the depreciated cost of the building, and the cost less depreciation of the machinery, equipment, autos and trucks. He does differ with the defendants on the question whether the ovens are fixtures or equipment to be separately valued, or a part of the building and as such included in the depreciated cost value of the building. He also directs attention to a few items not included in the

inventory valuation, such as sugar on hand and a supply of paper bags. Those are factors which might be significant in an action to determine the book value of the assets upon a particular date, which this action is not. As correctly stated by plaintiff's counsel during the trial, in this action for declaratory relief the meaning of "book value" as used in the by-law is the issue before the court, not that of ascertaining the value of the corporate shares. We have used specific items and figures entered in the books of account, as reflected in the balance sheet for December 31, 1949, merely as a means of ascertaining the kind of value used by this corporation in recording its financial transactions, incidental to and in aid of the ascertainment of the meaning of "book value" in the by-law under consideration.

In support of his position plaintiff has cited *Estate of Felton,* 176 Cal. 663 [169 P. 392], and a number of judicial decisions of other states. They are not helpful. Each turns upon its own peculiar facts or upon the meaning of "value" or "book value" as used in a particular statute. The Felton case involved the construction and applicaton of the state Inheritance Tax Act. The appellant claimed, the respondent conceded, and the court observed that the market value of the shares of a corporation was the statutory measure of value for taxing purposes.

Plaintiff introduced some evidence tending to show he did not understand the meaning of the by-law when he and the other shareholders voted for it and when he appended his signature to it as recorded in the minutes of the meeting. But he does not claim that the text of the by-law was inaccurately recorded, nor does he seek to reform that document or to rescind the action which he and the other shareholders took when they adopted it. For the purpose of this action we must accept the text of the by-law as put in evidence at the trial and incorporated in the record upon this appeal.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.