James P. DeFAZIO, Plaintiff,

v.

HOLLISTER EMPLOYEE SHARE
OWNERSHIP TRUST, et al.,
Defendants.

No. CIV S–04–1358LKK.

United States District Court,
E.D. California.

Feb. 23, 2005.

Lynn Hubbard, Scottlynn J. Hubbard, IV, Law Office of Lynn Hubbard III, Chico, CA, for Plaintiff.

James D. Adducci, Marshall L. Blankenship, Adducci, Dorf, Lehner, Mitchell and Blankenship, L. Andrew Brehm, Michael B. Roche, Schuyler, Roche and Zwirner, Chicago, IL, William A. Gould, Jr., Daniel Lawrence Baxter, Wilke, Fleury, Hoffelt, Gould & Birney, LLP, Sacramento, CA, for Defendants.

### ORDER

KARLTON, Senior District Judge.

Plaintiff, James P. DeFazio, brings this action against the defendants Hollister, Inc., Hollister Employee Share Ownership Trust ("Plan" or "Hollishare"), John Dickinson Schneider, Inc. ("JDS"), Samuel Brilliant, James A Karlovsky, James McCormack, Richard Zwirner, and Does 1–10, alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001. This matter is before the court on the defendants' motions to transfer venue and to dismiss.

I decide the motions based on the papers and pleadings filed herein and after oral argument.

# I.

## COMPLAINT

This case concerns plaintiff's community property share of his former wife's vested interest in HolliShare, the Hollister Employee Share Ownership Trust ("Plan"), an employee profit-sharing plan governed by ERISA.

Upon plaintiff's separation from his former wife, Kathleen J. Ellis ("Ellis"), on January 16, 1998, the Superior Court of California entered an order which awarded plaintiff a community property share of Ellis' vested benefits in the Plan she participated in while an employee of Hollister. The Superior Court ordered that the plaintiff, as an alternate payee[1] of the Plan, have his interest held in a "segregated account" and credited with a "proportionate share of earnings, interest, gains, losses and expenses allocated to ... [Ellis'] account from each full plan year from January 1, 1998 to the date of segregation." First Amended Complaint ("FAC"), Exh. E at 2.

On June 20, 2002, Hollister, HolliShare's administrator, created and transferred over to plaintiff's segregated account $905,798. The Superior court retained jurisdiction over plaintiff's share in the entire amount up to $1,500,000, pending resolution of child support and property settlement issues between plaintiff and Ellis. *Id.* Plaintiff alleges that he was entitled to request distribution for any amount in excess of the $1,500,000 at any time and in any form permitted by the terms of the Plan.

Plaintiff alleges that the defendants breached their fiduciary duties under ERISA by failing to act in the interest of his and other plan participants and beneficiaries. Specifically, he contends that the defendants engaged in a prohibited transaction because it purchased employer stock for inadequate consideration. According to plaintiff, HolliShare improperly provided its parent company, JDS, a right of first refusal to buy shares, and sold them at "book-value"[2] instead of fair market value. He also claims that, as an "alternate payee," he has received only a low-yield commercial paper rate of interest on his Plan account, rather than the benefit of the approximately 22% annual appreciation in the book value of JDS stock. FAC ¶ 18, n. 12. Finally, plaintiff alleges that Hollister violated ERISA by distributing payments from the segregated account

---

1. "The term 'alternate payee' for ERISA purposes means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 29 U.S.C. § 1056(d)(3)(K).

2. "Book Value" is a method or formula used to determine the value of corporate stock. "The term 'book value' has no generally accepted meaning; its significance varies according to the particular definitions or stipulations under which it is to be determined." 51 A.L.R.2d 606 § 2. " '[T]he law does not

define 'book value' as denoting a particular method of arriving at the value of fixed or other assets of a corporation.' " *Id.* (quoting *Lassallette v. Parisian Baking Co.*, 110 Cal. App.2d 375, 242 P.2d 671 (1952)). "[G]enerically and irrespective of ultimate form, the term contemplates a theoretical value resulting from depreciation or appreciation as computed upon an originally determined base. The formula whereby variation from the base figure is to be determined is supplied by some form of stipulation or acquiescence, either through express provisions of some kind, or through acceptance of particular accounting procedures previously applied." *Id.*

to Ellis, her attorney, and his children according to a domestic relations order, which, plaintiff asserts, is invalid.

## II.

## MOTION TO TRANSFER VENUE

### A. STANDARDS FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

██ Section 1404(a) of Title 28 provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Although Congress drafted § 1404(a) in accordance with the doctrine of *forum non conveniens,* it was intended to be a revision rather than a codification of the common law. *Piper Aircraft v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955). Thus, a § 1404(a) transfer is available "upon a lesser showing of inconvenience" than that required for a *forum non conveniens* dismissal. *Norwood,* 349 U.S. at 32, 75 S.Ct. 544.

██ The burden is upon the moving party to show that transfer is appropriate. *Commodity Futures Trading Commission v. Savage,* 611 F.2d 270, 279 (9th Cir.1979); *see also Los Angeles Memorial Coliseum Comm. v. National Football League,* 89 F.R.D. 497, 499 (C.D.Cal.1981) *aff'd,* 726 F.2d 1381, 1399 (9th Cir.1984). Nonetheless, the district court has broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.,* 211 F.3d 495 (9th Cir.2000) (quoting *Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 30, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)); *see Westinghouse Elec. Corp. v. Weigel,* 426 F.2d 1356, 1358 (9th Cir.1970).

██ Generally, the court affords plaintiff's choice of forum great weight. *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987) *cert. denied,* 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988). However, when judging the weight to be given to plaintiff's choice of forum, consideration must be given to the respective parties' contact with the chosen forum. *Id.* "If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter," plaintiff's choice "is entitled only minimal consideration." *Id.* Moreover, when a plaintiff brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight. *Id.*

 Although § 1404(a) partially displaces the common law doctrine of *forum non conveniens,* that doctrine's considerations are helpful in deciding a § 1404(a) motion. *Decker Coal Co. v. Commonwealth Edison,* 805 F.2d 834, 843 (9th Cir. 1986). Accordingly, the district court should consider both private and public interest factors affecting the convenience of the forum. *Id.* at 843 (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)); *see Stewart Org.,* 487 U.S. at 30, 108 S.Ct. 2239. Private factors include:

> [the] relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055, (1947). Public factors include:

> the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies de-

cided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft,* 454 U.S. at 241 n. 6 (quoting *Gulf Oil Corp.,* 330 U.S. at 509, 67 S.Ct. 839). In sum, the factors to be considered in determining whether a motion to transfer should be granted are: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; and (4) the interests of justice. *Los Angeles Mem'l Coliseum Comm.,* 89 F.R.D. at 499

As a threshold matter, all parties agree that, under 28 U.S.C. § 1391 and ERISA, 29 U.S.C. § 1132(e)(2), both this district and the Northern District of Illinois are proper venues.[3] Defs' Br. in Supp. of Mot. at 3; Pl's Oppo. at 4. Below, I examine the merits of defendants' motion.

## B. ANALYSIS

### 1. *Plaintiff's Choice of Forum*

In this circuit, a plaintiff's choice of forum is generally granted great weight, *Lou v. Belzberg,* 834 F.2d at 739, especially in ERISA cases, *Jacobson v. Hughes Aircraft Co.,* 105 F.3d 1288, 1301 *rev'd and remanded on other grounds, Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999).

■ Despite the general rule, defendants contend that, in this case, plaintiff's choice of forum deserves little weight because the operative facts have no material connection with the chosen forum. Defs' Br. in Supp. of Mot. at 7–8. To support

their contention, defendants argue that any breach of fiduciary duty occurred at the Libertyville, Illinois headquarters, and argue that the action is in this forum solely as a "fortuitous" consequence of the plaintiff's divorce from a former Hollister employee. *Id.* at 3–4. I cannot agree that there are no contacts with this forum.

The account in question came into being as a result of orders issued by the Superior Court of California. No fiduciary relationship existed between the parties until those orders. While the creation of the account is not at issue, the nature of, administration and compliance with the California issued orders are at the crux of this action.

Defendants also argue that because the plaintiff's claim could have been brought by any of the other "Hollishare plan participants in their home state," the plaintiff's choice "is entitled no deference." Defs' Mot. at 8 (citing *Koster v. (American) Lumbermens Mutual Cas. Co.,* 330 U.S. 518, 524–25, 67 S.Ct. 828, 91 L.Ed. 1067) (plaintiff's choice of forum carries less weight in a derivative action.) Defendants' argument is not persuasive. In the matter at bar, a significant aspect of plaintiff's complaint relates to his personal interests in the proper administration of his alternate payee account.

I conclude that the court must accord significant weight to plaintiff's choice of forum.

### 2. *Convenience of the Parties*

Defendants argue that Illinois is a more convenient forum because most of the defendants reside in Illinois. Both JDS and Hollister are Illinois corporations, and the

---

**3.** Defendants concede that venue is also proper in the Eastern District of California because Hollister does business in this district; therefore, Hollister not only is "found" in this venue, but "resides" in it as well. *See* 28 U.S.C. § 1391(c).

Hollishare Plan is administered from the Illinois headquarters.

Plaintiff, on the other hand, argues that California is the more convenient forum because he and his attorney reside in California. Although courts have not considered the location of the parties' counsel as a factor for transfer, Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3850 at 411, it is worth noting that, until recently, plaintiff proceeded in this action in *pro per.* Plaintiff asserts that he faced some difficulty in retaining counsel. Transferring this action to Illinois may therefore be burdensome and costly for plaintiff because it undoubtedly would require him to find new legal representation.

The court may consider the physical condition and the financial strength of each of the parties. *Jones,* 211 F.3d at 499 (courts may look at the costs of litigation in the two forums). As plaintiff points out, there is no indication that defendants suffer from financial constraints in defending this action and appear to have legal representation both in Illinois and in this district. Because a transfer here will merely shift any inconvenience from the defendants to the plaintiff, this factor must be weighed in plaintiff's favor. *See Van Dusen v. Barrack,* 376 U.S. 612, 646, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

### 3. *Convenience of the Witnesses*

■ The convenience of witnesses is an important factor in resolving a motion to transfer venue. *Los Angeles Mem'l Coliseum,* 89 F.R.D. 497, 501 (C.D.Cal.1981). In assessing this factor, "courts consider the effect of a transfer on the availability of certain witnesses and their live testimo-

ny at trial." *Id.* Defendants claim that many witnesses will be beyond the court's subpoena power if the suit remains in this district. Defendants cite to Fed.R.Civ.P. 45 in support of this claim.[4] The rule does not support defendants' position since it applies only to non-party witnesses. The witnesses named by the defendants as crucial are all parties to the suit and would be required to testify regardless of whether a subpoena is issued. In their reply, defendants also contend that certain of their employees who were responsible for administering the Plan are all located in Illinois. Defs' Reply Br. at 6–7. Aside from the impropriety of introducing new matter in a reply brief, the argument is unpersuasive since the defendants have failed to identify any non-party witnesses by name and to describe how maintaining this suit in California would affect them. Contrary to defendants' contention, this factor cannot swing in their favor.

### 4. *Interests of Justice*

Defendants also contend that transferring this action to Illinois will serve the interests of justice. According to them, because the Hollishare Plan is a product of Illinois state law, the Northern District of Illinois is better suited to decide state law claims. That contention clearly has no merit. This suit is predicated on a federal statute, ERISA, which "supersedes any and all State laws insofar as they may ... relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b)." 29 U.S.C. § 1144.

### 5. *Ease of Access to Proof*

In a last attempt to meet their burden, the defendants argue that the ease of ac-

---

**4.** That rule provides in relevant part, that "the court by which a subpoena was issued shall quash or modify the subpoena if it ... requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides ...." Fed.R.Civ.P. 45C(3)(A)(ii).

cess of proof weighs heavily in the favor of granting the motion to transfer. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (district courts, in their broad discretion, may look at additional factors such as the ease of access to proof.). Again, this factor does not significantly favor the defendants' motion.

In assessing the ease of access to proof, courts look at the location of records and documents. *Jones,* 211 F.3d at 499; *Decker,* 805 F.2d at 843. While modern technology has made it relatively easy to move records from one forum to another, the court should consider whether "moving ... records would cause hardship to a business." Wright, et al., *Federal Practice* § 3853–54 at 438. As with witnesses, general allegations that transfer is needed for the ease of obtaining records and books are not enough. *Id.* The moving party must "show the location and the importance of the documents in question." *Id.*

Defendants generally state that the relevant records and documents are generated and maintained at their Illinois headquarters. They fail, however, to explain or provide any insight into how they might suffer hardship or prejudice by having to defend this action in this district.

Defendants have not met their burden, and the motion to transfer must be denied.

### III.

### MOTION TO DISMISS

#### A. DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(b)(6)

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *See id.; see also Wheeldin v. Wheeler,* 373 U.S. 647, 648, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

#### B. ANALYSIS

The defendants argue that plaintiff fails to state a claim under ERISA and accordingly ask the court to dismiss this action in its entirety. I examine defendants' contentions below.

ERISA is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee

benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Nachman Corp. v. PBGC,* 446 U.S. 359, 375, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980). One of the primary purposes for the enactment of ERISA was to establish "standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans."

Plaintiff alleges that the defendants breached their fiduciary duties when they valued HolliShare's stock using the "book value" instead of the "fair market value" and entered into prohibited transactions with JDS, a party in interest. Section 406 of ERISA, 29 U.S.C. § 1106, establishes a blanket prohibition against certain transactions, such as the sale of stock to an ERISA Plan by a party in interest, because of the high potential for abuse. ERISA does, however, provide an exemption from § 406 for these types of transactions if they meet certain requirements. § 408(e), 29 U.S.C. § 1108(e). Section 408(e) provides an exemption for the sale or acquisition by a plan of employer stock if the sale price is for "adequate consideration." 29 U.S.C. § 1108(e). When the security is not traded on a national securities exchange, the term "adequate consideration" means "a price not less favorable to the plan than the offering price for the security as established by the current bid and asked prices quoted by persons independent of the issuer and of any party in interest." 29 U.S.C. § 1002(18).

Here, plaintiff states a cognizable claim because he alleges that HolliShare, the pension plan, sold stock to its parent corporation, JDS, for less than adequate consideration. While defendants ardently de-

fend the challenged transactions on the grounds that the valuation of stock based on "book value" is adequate consideration, the court may not resolve that issue at this procedural posture, since that is a merits question to be examined at a later stage.[5]

■ Alternatively, the defendants assert that even if plaintiff states a claim, the causes of action based on any alleged prohibited transactions must be dismissed because they are barred by the statute of limitations. For the reasons explained below, I conclude that defendants are correct as to the § 406 claim.

ERISA provides, in relevant part:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after . . .

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . . .

29 U.S.C. § 1113.

In *Ziegler v. Connecticut General Life Ins. Co.,* 916 F.2d 548 (9th Cir.1990), the Ninth Circuit applied a two-step analysis to determine the accrual of an ERISA action: "first, when did the alleged 'breach or violation' occur; and second, when did [the plaintiff] have 'actual knowledge' of the breach or violation?" *Id.* at 550. I examine these factors seriatim.

#### 1. *Occurrence of Breach or Violation*

The court must first " 'isolate and define the underlying violation upon which . . . [plaintiff's] claim is founded.' " *Id.* at 551

---

5. A fiduciary who claims that a transaction is exempted from the prohibitions of ERISA § 406 has the burden of proving that the stock was purchased for no more than adequate consideration. *Lowen v. Tower Asset Management, Inc.,* 829 F.2d 1209, 1215 (2d

Cir.1987); *Donovan v. Cunningham,* 716 F.2d 1455, 1467–68 (5th Cir.1983). For the exemption of ERISA § 408(e) to apply, fiduciaries must: (1) engage in a prudent investigation and (2) pay no more than fair market value for the securities purchased.

(quoting *Meagher v. International Ass'n of Machinists and Aerospace Workers Pension Plan,* 856 F.2d 1418, 1422 (9th Cir. 1988), *cert. denied,* 490 U.S. 1039, 109 S.Ct. 1943, 104 L.Ed.2d 414 (1989)). As noted, plaintiff alleges a breach of fiduciary duties in violation of 29 U.S.C. § 1106(a). The ERISA breach or violation, if any, occurred upon the creation and execution of the Plan's Articles of Incorporation, because it is that instrument that provides that JDS may purchase stock from HolliShare and which establishes the stock's book value as the fair market value. *Id.*

### 2. *Fair Market Value*

Regardless of when the breach occurred, the statute of limitations cannot begin to run "until the plaintiff has actual knowledge of the breach." *Id.* at 552. Plaintiff contends that "actual knowledge" does not occur until the alleged breach is proven or admitted. I cannot agree.

Actual knowledge is obtained when a person reasonably should have known of the breach. *Ziegler* is instructive on this point. There, pension plan administrators alleged that an investment company breached its fiduciary duties because it made a "market value" adjustment that resulted in retention of nearly a hundred thousand dollars in pension assets. 916 F.2d 548. The Circuit held that the claim was untimely because plaintiffs acquired actual knowledge of the breach when the defendants "unequivocally and specifically" informed plaintiffs that it would retain a substantial amount of pension funds based on the market value. *Id.* at 552. Because

plaintiff's causes of actions were based on that very same transaction, their claims were dismissed.

Whether plaintiff had "actual knowledge" is a factual question. As I now explain, the uncontestable facts demonstrate that plaintiff's claim is barred.

Plaintiff's attachments to his opposition brief and his admissions establish that he had actual knowledge of the alleged violation as early as 1997. Plaintiff's opposition brief contains as exhibits two letters showing that plaintiff's lawyer and HolliShare's Trustees corresponded over their respective positions of the propriety of the valuation method used and the stock sales to JDS. *See* Exh. A, B to Pl's Br. in Opp. to Mots. to Dism. Those letters indicate that plaintiff, through his counsel, questioned the adequacy of the stock's valuation and asserted that the "book value" method disqualified the Plan. Exh. A to Pl's Br. in Opp. to Mots. to Dism. In a letter to plaintiff's lawyer, dated March 5, 1998, the trustees acknowledged that "the essence of [plaintiff's] complaint is HolliShare's use of book value in valuing the common share of . . . [JDS]." *Id.* at Exh. 2. The letter defends HolliShare's practices as legally proper and invites plaintiff's lawyer to provide the trustees with applicable law proving the contrary. *Id.*

The defendants tender evidence of additional correspondence dating as early as September 26, 1997, where plaintiff accused the defendants of violating ERISA based upon the same reasons underlying the causes of actions in this suit.[6]

---

**6.** The defendants request that the court take judicial notice of these letters because they were filed with plaintiff's pleadings in a prior, related court proceeding. Defs' Request for Jud. Notice at 3. On a motion to dismiss, "[t]he court need not accept as true, allegations that contradict facts which may be judicially noticed." *United States v. Southern Cal-*

*ifornia Edison Co.,* 300 F.Supp.2d 964 (E.D.Cal.2004) (Wanger, J.) (citing *Mullis v. United States Bankruptcy Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987)). Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex rel. Robin-*

Plaintiff's September 26, 1997 letter establishes not only his actual knowledge of HolliShare's valuation methodology, but also of its purported illegality. In that letter, plaintiff explicitly stated that, "[a]ll of the tax attorneys and pension consultants I've discussed this matter with say that [blue book valuation] is definitely an incorrect practice." Req. for Judicial Notice, Item 2a at 2. On November 3, 1997, the defendant trustees responded to plaintiff and explained, in relative detail, the method of valuation and the Plan's provisions regarding JDS's right of first refusal. Despite his full knowledge of HolliShare's valuation and selling practices at that time, his belief that those practices were violative of ERISA, and assistance of counsel, plaintiff inexcusably waited until 2004—approximately six and a half years later—before filing this action. Accordingly, plaintiff's causes of actions based on the valuation of the stock and transaction with an interested party are barred by the statute of limitations set forth in ERISA § 413 (29 U.S.C. § 1113).

■ Plaintiff attempts to save his claims by asserting that tolling provisions apply because the defendants committed fraud and concealment. 29 U.S.C. § 1113(1) provides for tolling of the limitation period until the date of discovery of the ERISA breach* or violation in cases of fraud or concealment. As I explain, plaintiff invokes that section to no avail.

According to plaintiff, defendants committed fraud and concealed the ERISA violations when they denied any wrongdoing. However, the " 'fraud or concealment' exception applies only when an ERISA fiduciary either misrepresents the significance of facts the beneficiary is aware of (fraud) or ... hides facts so that

the beneficiary never becomes aware of them." *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir.1990). Here, DeFazio has not alleged or otherwise identified any fact that was misrepresented to him. Instead, it is clear that defendants admitted all of plaintiff's factual allegations, but denied his legal conclusions that their practices were illegal. *See also Whitlock Corp. v. Deloitte & Touche, L.L.P.*, 233 F.3d 1063, 1066 (7th Cir.2000) ("Simple denials of liability do not toll the period of limitations or estop the adverse party to rely on it"). Contrary to plaintiff's contention, the statutory period was not tolled and had expired prior to filing a complaint.

■ I now examine whether plaintiff's last claim can survive the defendants' motions to dismiss. Plaintiff alleges that the defendants violated ERISA by honoring various state court orders requiring disbursements of funds from his HolliShare account to satisfy his unpaid child support obligations. ERISA provides for state court-ordered assignments of plan benefits to former spouses and dependents. 29 U.S.C. § 1056(d)(3) provides that pension plans "shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order ["QDRO"]." QDROs are a type of domestic relations order ["DRO"] relating "to the provision of child support, alimony, or marital property rights to a spouse, former spouse, child, or other dependent of a plan participant ... made pursuant to a State domestic relations law." 29 U.S.C. § 1056(d)(3)(ii). A DRO is a QDRO if it "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right

son Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992) (internal quotations and citations omitted). Fur-

ther, plaintiff admits the existence and contents of those letters.

to, receive all or part of the benefits payable with respect to a participant under a[n ERISA] plan," 29 U.S.C. § 1056(d)(3)(B), and does not (1) require the plan to provide any type of benefit not otherwise provided, (2) require the plan to provide increased benefits, or (3) require benefits to be paid to an alternate payee which must be paid to another alternate payee under another QDRO, 29 U.S.C. § 1056(d)(3)(D). Finally, a QDRO must specify the name and mailing address of the alternate payee and the affected plan participant, the amount or percentage of the participant's benefits to be paid or the means by which that amount will be determined, the number of payments or time period to which the order applies, and the plan to which the order applies. 29 U.S.C. § 1056(d)(3)(c). Plaintiff alleges that a series of DROs issued pursuant to divorce proceedings do not comply with these requirements and are therefore not QDROs.

Plaintiff first alleges that the defendants improperly administered a March 29, 2002 QDRO stipulated to by the parties. According to plaintiff, his account, as an alternate payee, was not invested according to the Articles of Incorporation and has consequently suffered a loss in value. He also claims that, according to the Plan's provisions, he has the right to a distribution of his interest, but that the defendants have denied him that option. FAC at 10.

Second, according to plaintiff, "supplemental" DROs issued on August 5, 2002, April 2, 2003, May 4, 2004, and June 30, 2004, were improperly obeyed by the defendants. Those QDROs "directed the Plan to make a series of partial payments of [plaintiff's account] to [Ellis], her attorney, and his unnamed children for current child support and attorney's fees." FAC

at 7. Plaintiff alleges that defendants are improperly distributing his interest as an alternate payee to another alternate payee. He also asserts that these DROs do not qualify under ERISA because they "require multiple distributions" in a manner that is not provided for under the Plan. FAC at 19.

The allegations in this case, whether the Plan improperly administered the state court DROs as QDROs, "turns on the precise manner in which an alternate payee's state-law-created interest in an ERISA plan is enforced under ERISA's QDRO provisions." *Trustees of Directors Guild of America–Producer Pension Benefits Plans v. Tise,* 234 F.3d 415, 420 (9th Cir. 2000). "Whether a state court's order meets the statutory requirements to be a QDRO, and therefore is enforceable against the pension plan, is a matter determined in the first instance by the pension plan administrator, and, if necessary, by a court of competent jurisdiction." *Id.* at 421 (citing 29 U.S.C. § 1056(d)(3)(H)(I)).

In support of their motion to dismiss, the defendants submit and point to evidence to prove that, as a matter of law, plaintiff's claims fail. The defendants ask that the court examine the QDROs and other documents attached to the parties' papers and argue that the case law proves that they complied with all applicable ERISA provisions. Those arguments are best made in a summary judgment motion, and not here. On a motion to dismiss, the court must take the plaintiff's alleged facts as true and determine if the law provides him with a cognizable cause of action. According to this standard, plaintiff survives the defendants' motions.[7]

---

**7.** Because plaintiff's QDRO claims do not run against defendant JDS, that defendant's mo-

tion will be granted.

## IV.

### CONCLUSION

For all the foregoing reasons, the court hereby ORDERS that:

1. Defendants' motion to transfer venue is DENIED.

2. Defendants' motions to dismiss the causes of actions based on ERISA prohibited transactions and stock valuation are GRANTED;

3. Defendants' motions to dismiss plaintiff's QDRO causes of actions are DENIED;

4. Defendant JDS is dismissed from this action; and

5. Pursuant to the parties' stipulation, the hearing currently scheduled for March 21, 2005 on plaintiff's motion for partial summary judgment is hereby VACATED.

IT IS SO ORDERED.